UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID  MERRILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00172-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff David Merrill applied for disability and disability insurance benefits from the Social Security Administration ("SSA") on July 17, 2012, alleging an onset date of August 1, 2007. [Filing No. 13-5 at 2; Filing No. 13-2 at 20.]  His application was denied initially on October 11, 2012, [Filing No. 13-4 at 9], and upon reconsideration on January 2, 2013, [Filing No. 13-4 at 23]. Administrative Law Judge James G. Myles ("ALJ") held a hearing on July 25, 2013, [Filing No. 13-2 at 53], whereupon he issued a decision on August 12, 2013, concluding that Mr. Merrill was not entitled to receive benefits, [Filing No. 13-2 at 21].  The Appeals Council denied review on September 15, 2014.  [Filing No. 13-2 at 6.]  Mr. Merrill then filed this civil action, asking the Court to review the denial of benefits pursuant 42 U.S.C. § 405(g).  [Filing No. 1.]

## I.
### BACKGROUND

Mr. Merrill was born on January 20, 1973, [Filing No. 13-5 at 2], and has a seventh grade education, [Filing No. 13-6 at 2], with previous work experience as an industrial chauffer, laborer/handyman, landscaper/tree trimmer, and a newspaper deliverer, [Filing No. 13-2 at 70;

Filing No. 13-6 at 2].[1]  Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on August 12, 2013, determining that Mr. Merrill was not entitled to receive disability benefits.  [Filing No. 11-2 at 12.]  The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Merrill had not engaged in substantial gainful activity[2] since the alleged onset date.  [Filing No. 13-2 at 23.]

- At Step Two of the analysis, the ALJ found that Mr. Merrill suffered from the following severe impairments: "history of otitis media and otitis externia, scoliosis, plantar fasciitis, neuropathy, history of MRSA, left elbow injury, obesity, borderline intellectual functioning, depression, anxiety, and a personality disorder." [Filing No. 13-2 at 23.]

- At Step Three of the analysis, the ALJ found that Mr. Merrill did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 13-2 at 24.]

- After Step Three but before Step Four, the ALJ found that Mr. Merrill has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: "The claimant can stand and walk for 30 minutes at one time.  After standing or walking for 30 minutes, the claimant

---

[1] Mr. Merrill detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts.   Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Merrill, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

should be given the opportunity to rest for 2 minutes and/or work from a seated position.  The claimant can occasionally perform overhead reaching with both arms.  He can perform occasional reaching in other directions with the left upper extremity.  The claimant can frequently but not continuously perform handling or fingering.  Further, the claimant should avoid concentrated exposure to work hazards.  Although the claimant can have occasional interpersonal contact in the workplace, he should not work as part of a team.  The claimant should not perform high output or piecemeal work.  Extensive contact with the public should not be a critical function of the claimant's job responsibilities.  The claimant is limited to routine, unskilled work."  [Filing No. 13-2 at 26.]

·   At Step Four of the analysis, the ALJ found that Mr. Merrill is unable to perform any past relevant work.  [Filing No. 13-2 at 29.]

·   At Step Five of the analysis, the ALJ found that considering Mr. Merrill's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Mr. Merrill can perform.  [Filing No. 13-2 at 29.]

Mr. Merrill sought review of the ALJ's decision from the Appeals Council, but that request was denied, making the ALJ's decision the Commissioner's final decision subject to judicial review.  Mr. Merrill then filed this action, asking that the Commissioner's decision be reversed and requesting an award of benefits, or in the alternative, that the case be remanded for further proceedings.  [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Mr. Merrill presents three challenges:  (1) the ALJ failed to incorporate Mr. Merrill's borderline intellectual functioning and limitations of concentration, persistence, and pace into his RFC; (2) the ALJ failed to include Mr. Merrill's borderline intellectual functioning and limitations

5

of concentration, persistence, and pace in his hypothetical questions to the vocational expert;[3] and

(3) the ALJ's findings that Mr. Merrill's noncompliance with medical treatment and performance

of daily activities are inconsistent with total disability are not based on substantial evidence.  The

Court will address the issues in turn.

### A.  Residual Functional Capacity

Mr. Merrill argues that the ALJ failed to consider Mr. Merrill's borderline intellectual

functioning and his moderate limitations of concentration, persistence, or pace into the RFC

assessment.  [Filing No. 15 at 13.]  Mr. Merrill claims that the ALJ acknowledged his borderline

intellectual functioning when he cited the opinion of state agency psychologist Robert Kurzhals,

M.D., and when he stated, "the claimant's mental impairments including his learning deficiencies

are fully accommodated in the residual functional capacity." [Filing No. 15 at 14 (citing Filing No.

13-2 at 28)].

He argues, however, that despite the quantity of evidence regarding his borderline

intellectual functioning, the ALJ failed to consider this limitation in connection with the RFC

assessment.  [Filing No. 15 at 15-16.]  Mr. Merrill further argues that the ALJ failed to include his

moderate limitations of concentration, persistence, or pace in the RFC assessment.  [Filing No. 15

at 15.]  In particular, he claims that Dr. Kurzhals described him "as [an] immature and intellectually

limited individual who has limited coping skills," his ex-wife said she was his "maternal case

manager," and Heather Downhour, M.D., who performed his psychiatric evaluation at Gallahue

---

[3] Mr. Merrill structured the first two issues as one argument.  However, because one argument disputes the sufficiency of the ALJ's RFC determination and the other one questions whether the ALJ included all of Mr. Merrill's limitations in the hypothetical, the Court will address the arguments as two separate issues.

Mental Health Center, assessed his "thought process" as concrete, ruminating and circumstantial.

[Filing No. 15 at 16.]  He argues that the ALJ should have found him limited in his ability to:

· understand and carry out short and simple instructions;

· maintain attention and concentration for extended periods;

· sustain an ordinary routine without special supervision; and

· complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

[Filing No. 15 at 16-17.]  Mr. Merrill argues that if the ALJ did not think he was limited as suggested above, he should have articulated those reasons in his decision.  [Filing No. 15 at 17.]

In response, the Commissioner argues that the ALJ provided a narrative of Mr. Merrill's medical and nonmedical evidence, assessed his abilities, and provided an explanation as to how the evidence supports the ALJ's RFC findings.  [Filing No. 20 at 10.]  The Commissioner states that Mr. Merrill does not point to substantial medical evidence that supports greater mental limitations.    The  Commissioner  further  states  that  the  ALJ  relied  on  two  state  agency psychologists, Amy S. Johnson, PhD., and  J. Gange, Ph.D., to support the ALJ's assessment of Mr. Merrill's mental limitations.  [Filing No. 20 at 11.]  She claims that Mr. Merrill's statements and activities do not support debilitating limitations, and his work history demonstrates an ability to perform semi-skilled work.  [Filing No. 20 at 11-12.]  The Commissioner points out that Mr. Merrill passed a written driving test on his first attempt, recalled his cellphone number, had conservative mental health treatment, and terminated his mental health services.  [Filing No. 20 at 12.]  Additionally, the Commissioner argues that the ALJ did not give significant weight to Dr. Kurzhals' Global Assessment of Functioning ("GAF") score of 48 because it was inconsistent with the record.  [Filing No. 20 at 13.]  She alleges that a diagnosis of severe borderline intellectual

functioning alone does not indicate the severity of the condition and that two state agency psychologists, who were aware of Dr. Kurzhals' diagnosis, opined that Mr. Merrill was capable of performing a range of simple, routine work. [Filing No. 20 at 14.]

In reply, Mr. Merrill argues that the ALJ must do hard work and discover the nature and extent of Mr. Merrill's functional limitations. [Filing No. 21 at 9.] He alleges that the ALJ's use of "cryptic language," such as "a range of simple, routine work," does not show how his borderline intellectual functioning impacts "simple and routine work," and cites examples that he claims demonstrate that his cognitive impairment is more limited. [Filing No. 21 at 2 (citing Filing No. 13-9 at 10).] Additionally, Mr. Merrill questions how someone with other severe impairments of depression, anxiety, and borderline personality disorder can function in competitive employment. [Filing No. 21 at 3.] As to his concentration, persistence or pace, Mr. Merrill argues that the ALJ simply stated that he was not required to "perform high output or piecemeal work," and claims that a more individualized assessment should have been done. [Filing No. 21 at 3.] He further argues that this generic limitation does not take into account the substantial limitations noted by Dr. Kurzhals, Mr. Merrill's ex-wife, or Dr. Downhour. [Filing No. 21 at 4.] Mr. Merrill argues that, contrary to the Commissioner's argument, the ALJ did not discount Dr. Kurzhals' Axis I and II assessments and clinical observations. [Filing No. 21 at 5.]

A claimant's RFC "is the most [the claimant] can still do despite [their] limitations," and is assessed "based on all the relevant evidence in the claimant's case record." 20 C.F.R. § 404.1545(a)(1). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563; *see* SSR 96–8p. Thus, the RFC must be supported by substantial evidence in the record. *Clifford*, 227 F.3d at 873. The

ALJ must connect the evidence to the conclusion through an accurate and logical bridge. *Stewart*

*v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).  The Court will not reweigh the evidence or substitute

the ALJ's analysis with its own. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

The Court finds no error in the ALJ's RFC assessment.  The ALJ provided a thorough

narrative of the evidence, discussed Mr. Merrill's physical and mental impairments and functional

limitations, and cited specific evidence to support the RFC determination.  Thus, Mr. Merrill points

to no substantial evidence from the record that would require greater limitations of his cognitive

impairments.

Moreover, Mr. Merrill's reliance on Dr. Kurzhals' opinion is unfounded.  The ALJ

discussed Dr. Kurzhals' opinion, but found Dr. Kurzhals' GAF score was inconsistent with Mr.

Merrill's course of treatment.  The ALJ noted, "I have considered state-agency assessments and

they are generally consistent with my findings here . . . I give some weight to [Dr. Kurzhals']

opinion.  However, more weight is given to the state-agency assessments given the claimant's past

work history of semi-skilled positions and his level of activity." [Filing No. 13-2 at 29.]  The state

agency assessments that the ALJ cites are from Dr. Johnson and Dr. Gange.  In her findings, Dr.

Johnson stated in part:

> Claimant has the mental capacity to understand, remember, and follow simple
> instructions.  [Claimant] is restricted to work that involves brief, superficial
> interactions [with] fellow workers, supervisors and the public.  Within these
> parameters and in the context of performing simple, routine, repetitive, concrete,
> tangible tasks, [claimant] is able to sustain attention and concentration skills to
> carry out work like tasks with reasonable pace and persistence.

[Filing No. 13-9 at 10.]

Dr. Gange affirmed Dr. Johnson's findings.  Although the ALJ did not reject Dr. Khurzals'

findings in their entirety, he gave more weight to the assessments from Dr. Johnson and Dr. Gange.

SSR 96–6p; *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that the ALJ

properly weighed the opinions of two medical experts in determining the claimant's RFC).

Further, the ALJ concludes that the RFC provides greater limitations than the limitations found in

the state agency assessments.  [Filing No. 13-2 at 28.]  The ALJ's RFC states that Mr. Merrill

should avoid concentrated exposure to work hazards, should not work as part of a team, should

not perform output or piecemeal work, should not have extensive contact with the public, and

should be limited to routine, unskilled work.  [Filing No. 13-2 at 26.]  Thus, the Court finds the

ALJ's RFC assessment is supported by substantial evidence.

### B. Hypothetical Questions

Mr. Merrill argues that the ALJ failed to include Mr. Merrill's borderline intellectual

functioning and his limitations with concentration, persistence and pace in the hypothetical

questions to the vocational expert.  Mr. Merrill argues that this is not harmless error since the

vocational expert could have determined Mr. Merrill not able to perform any job and, thus, could

have found him disabled.  [Filing No. 15 at 17.]  To support his argument, he cites *O'Connor-*

*Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), and claims that the ALJ in that case erred in

omitting the claimant's moderate limitations of concentration, persistence, and pace from the

hypothetical posed to the vocational exert, although the ALJ found such limitations existed.

[Filing No. 15 at 18.]

The Commissioner, in response, argues that the ALJ committed no error since the ALJ's

RFC was valid and the hypothetical questions posed to the vocational expert were based on the

RFC assessment.  Further, the Commissioner disagrees with Mr. Merrill's reliance on *O'Connor-*

*Spinner*, 627 F.3d at 614, and argues that in that case, the ALJ failed to incorporate all of the mental

limitations from the RFC into the hypothetical questions posed to the vocational expert.  Here, the

Commissioner contends, the hypothetical questions included all the limitations that the ALJ included in the RFC.  [Filing No. 20 at 16-17.]

In reply, Mr. Merrill reiterates that the ALJ failed to articulate or translate Mr. Merrill's functional limitations pertaining to his cognitive impairment into meaningful language for the vocational expert.  [Filing No. 21 at 2.]

Seventh Circuit precedent holds that "both the hypothetical posed to the vocational expert and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."  *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014).  It also acknowledges that there is "uncertainty in law regarding the formulation of hypothetical questions accounting for mental limitations."  *Kusilek v. Barnhart*, 175 Fed. App'x. 68, 71 (7th Cir. 2006).  Generally, the ALJ is required to orient the vocational expert to the totality of a claimant's limitations.  *O'Connor-Spinner*, 627 F.3d at 619.  One limitation that the ALJ must consider is any deficiency of concentration, persistence, and pace.  *Id.*

The Court finds no error in the hypothetical posed to the vocational expert.  In fact, the hypothetical, noted in part below, essentially mirrors the RFC assessment:

> The individual would need to avoid a concentrated exposure to hazards. And the work would be routine and unskilled.  Would only involve occasional interpersonal contact incidental to the work.  Would not be part of a team or working with the general public as part of critical job duties.  And the work would not be high assembly like - - type work or paid by the piece work.

[Filing No. 13-2 at 71.]

In determining the RFC, the ALJ gave more weight to the opinions of Dr. Johnson and Dr. Gange, who noted that Mr. Merrill was not as limited in his cognitive abilities.  Dr. Johnson specifically found that Mr. Merrill "is able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence."  The ALJ considered other evidence from

the record, such as his medical history, functional limitations, and prior work experience, which supported similar findings.  Further, contrary to Mr. Merrill's argument, *O'Connor-Spinner*, 627 F.3d at 614 is inapposite.  *O'Connor-Spinner* stands for the proposition that the ALJ should refer expressly to limitations of concentration, persistence and pace in the hypothetical so that the vocational expert can give a proper account of the jobs the claimant can do.  *O'Connor-Spinner* held that the hypothetical did not properly orient the vocational expert to the claimant's limitations of concentration, persistence, and pace because it merely limited the claimant's abilities to perform simple, repetitive work.  However, the ALJ's RFC in *O'Connor-Spinner* explicitly noted that the claimant had depression-related problems in concentration, persistence, and pace, whereas here, the ALJ discussed Mr. Merrill's mental impairments in the decision, but concluded in the RFC assessment that Mr. Merrill was not as limited in his cognitive abilities.  Thus, the ALJ's hypothetical posed to the vocational expert properly reflected Mr. Merrill's limitations.

### C. Activities of Daily Living and Noncompliance with Medical Treatment

Mr. Merrill argues that the ALJ erred when he considered Mr. Merrill's activities of daily living and his history of non-compliance with medical treatment.  Mr. Merrill claims that the ALJ found him capable of driving his vehicle, caring for his aging parents, performing self-care without assistance, preparing simple meals, doing yard work, and shopping, [Filing No. 15 at 21 (citing Filing No. 13-2 at 28)], and argues that, as instructed by Seventh Circuit precedent, the ALJ failed to explain any inconsistencies between these activities and the medical evidence.  [Filing No. 15 at 22.]  Mr. Merrill further states that his history of noncompliance "may have something to do with mental issues," but that the ALJ failed to take this into account.  [Filing No. 15 at 22.]

In response, the Commissioner argues that, contrary to Mr. Merrill's argument, the ALJ considered Mr. Merrill's history of medical treatment and activities together with other evidence

in the record, and found them inconsistent with his claim of disability. [Filing No. 20 at 15.] Further, the Commissioner claims that the ALJ did not err when he considered Mr. Merrill's history of noncompliance because it was helpful in determining whether Mr. Merrill's allegations were credible. [Filing No. 20 at 15.] The Commissioner argues that Mr. Merrill's termination of health treatment was inconsistent with his allegedly disabling mental impairments. [Filing No. 20 at 15.] Further, the Commissioner states that Mr. Merrill alleged that he suffers from both physical and mental impairments, and thus, the ALJ considered "the entire mosaic" of his allegations. [Filing No. 20 at 15.]

In reply, Mr. Merrill argues that the ALJ's assessment of Mr. Merrill's daily activities was not done with care as required by Seventh Circuit precedent and that he failed to explain the inconsistencies between the activities of daily living and his medical records. [Filing No. 21 at 8.] Further, Mr. Merrill argues that his refusal to seek medical treatment is due to his poor judgment caused by his borderline intellectual functioning, and the fact that there is no cure for such a diagnosis. [Filing No. 21 at 6-7.]

An ALJ is in the best position to determine the credibility of witnesses, and the Court reviews that determination deferentially. *Craft*, 539 F.3d at 678. A credibility determination must contain specific reasons for the credibility finding. *Id.* (citing SSR 96–7p). The finding must be supported by the evidence and must be specific enough to enable the claimant and the Court to understand the reasoning. *Id.* (citations omitted). In addition to objective medical evidence, the ALJ considers various factors in the credibility of a claimant's statements, which include the claimant's daily activities and their medical treatment. SSR 96–7p.

Although is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)

(citing SSR 96–7p).  Seventh Circuit precedent has cautioned that a person's ability to perform daily activities does not necessarily translate into an ability to work full-time.  *Id.* (citations omitted)

The Court disagrees with Mr. Merrill.  The ALJ properly evaluated Mr. Merrill's level of activities and his noncompliance with medical treatment to assess his credibility and evaluate the extent of his limitations.  The ALJ did not conclude that Mr. Merrill's daily activities translated into his ability to work full time.  Rather, the ALJ cited specific examples in the decision that demonstrate Mr. Merrill's daily activities are inconsistent with disability, such as his ability to drive regularly, take care of his parents, do yard work, and shop.

Additionally, the Court recognizes that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."  *Id.* (citations omitted).  Although the ALJ did not inquire about Mr. Merrill's failure to seek medical treatment during the hearing, such failure to do so is harmless error.  *See, e.g.*, *Mueller v. Colvin*, 524 F. App'x 282, 285 (7th Cir. 2013) ("[T]he absence of a rationale may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless.").  When the ALJ analyzed Mr. Merrill's credibility from his refusal to seek medical treatment, he did so in combination with Mr. Merrill's daily activities.  Further, the ALJ considered the record as a whole and noted that his mental health record fails to support greater limitations beyond the assessed RFC.  Thus, no remand is necessary.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  "The Act does not contemplate

degrees of disability or allow for an award based on partial disability." *Id.* (*citing Stephens*, 766

F.2d at 285). "Even claimants with substantial impairments are not necessarily entitled to benefits,

which are paid for by taxes, including taxes paid by those who work despite serious physical or

mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F.

App'x at 274. Taken together, the Court can find no legal basis presented by Mr. Merrill to reverse

the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision

below is **AFFIRMED**. Final judgment shall issue accordingly.


Date: ___October 27, 2015___

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


Distribution:

Theodore F. Smith, Jr
THEODORE F. SMITH JR. PC
tsmith@tedsmithlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov